[No. 3899. Decided January 2, 1902.]

JAMES LIVINGSTONE, *Respondent,* v. JOHN LOVGREN, *Appellant.*

LOGS AND LOGGING — CONVERSION — ENFORCEMENT OF LIEN — PLEADING.

Under Bal. Code, § 4931, which provides that the allegations of a complaint must be liberally construed, with a view to substantial justice between the parties, an allegation that defendants "eloigned and converted to their own use about 133,000 feet of said logs which were of the value of $675" must be construed as sufficient, where no motion to make more definite and certain was interposed.

SAME.

The objection that an allegation of the complaint is merely 'a conclusion of law cannot be urged on the ground that the complaint does not state facts sufficient to constitute a cause of action.

SAME — INCONSISTENT ALLEGATIONS.

The fact that a complaint for the enforcement of a lien on saw logs alleged that the "defendants, the Western Shingle Company, eloigned and converted to their own use about 133,000 feet of said logs," while the lien notice described the property as "a certain lot of logs, being about 640,000 in quantity, which were cut

in Island county, state of Washington, and are marked B. B., and were put into and rafted in Useless Bay, from which place, while this lien was in full force, about 515,000 were taken away and sold to the Bell-Nelson Mill Company," is not necessarily the allegation of contradictory facts, since the logs sold to the one party may have afterwards come into the possession of the other.

##### SAME — BONA FIDE PURCHASER.

Under Bal. Code, § 5944, which provides that no mistake or error in the description of the property against which a lien claim is filed shall invalidate the lien, except as against subsequent *bona fide* purchasers, unless it was made with intent to defraud, and under Id., § 5945, which provides that it shall be conclusively presumed by the court that a party purchasing the property liened upon within the thirty days given the claimant wherein to file his lien is not an innocent third party, a purchaser of saw logs within the thirty days during which a lien could be filed thereon, and before the lien notice was actually filed, cannot claim that he was misled by an erroneous statement in the lien notice, especially where he had knowledge of enough facts to put him on inquiry as to claimants' right of lien.

##### SAME—LIABILITY OF PURCHASER — IMPLIED CONTRACT.

A purchaser of logs on which there is a lien, within the thirty days in which the claimant may file his lien notice, must see that the purchase money is appropriated to the satisfaction of the lien, or he is liable upon an implied contract to the lien claimant, up to the full value of the logs.

##### SAME — JUDGMENT.

In an action against a partnership for the eloignment and conversion of saw logs upon which plaintiff had a lien, a decree awarding judgment to be satisfied out of the joint property of all the partners is warranted, although but one of them was served with summons, where it appears that the defendant served purchased the logs in behalf of his firm and that the partnership converted the logs into shingles and destroyed their identity, since plaintiff had a right to waive the tort and recover the value of the property as on an implied contract, and under Bal. Code, § 4881, in an action against defendants jointly indebted upon contract, plaintiff may proceed against the defendants served and have judgment entered against all the defendants jointly indebted "so far only as it may be enforced against the joint property of all and the separate property of the defendants served."

SAME — PAYMENT — INSUFFICIENCY OF EVIDENCE.

In an action against defendants for the conversion of logs, to the destruction of plaintiff's lien thereon, the evidence does not show partial payment of plaintiff's claim, when it appears from a judgment roll in another case against his employers, introduced in evidence, that his claim had been reduced to judgment in the former action and his lien established on all the logs, inasmuch as proof of the sale of part of the logs liened upon and payment therefor would not be proof of payment of plaintiff's claim in an action to enforce his lien against another portion of the logs, which he was privileged to do under Bal. Code, § 5943.

Appeal from Superior Court, Snohomish County.— Hon. CORWIN S. SHANK, Judge *pro tem.* Affirmed.

*Lyman E. Knapp,* for appellant.

*H. A. Porter* and *Cooley & Horan,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is an action brought by the respondent to enforce a lien for work done in getting out saw logs, and to charge the appellant and the partnership of which he was a member for the amount of the lien because of their conversion of the logs. The first objection is that the complaint does not state a cause of action. This was not raised by demurrer, but is raised for the first time in this court. The particular objection is that the allegation in the complaint "that on or about the 1st day of November, 1899, without plaintiff's consent, the above named defendants, the Western Shingle Company, eloigned and converted to their own use about 133,000 feet of said logs which were of the value of $675," is insufficient, and is a conclusion of law. No motion was made in the court below to make this allegation more definite and certain. The allegations of the complaint must be liberally construed, with a view to substantial justice between the parties. § 4931, Bal. Code. This allegation, under a liberal con-

struction, means that the Western Shingle Company conveyed the logs to a distance, then appropriated them illegally to their own use. Under such an allegation proof was admissible to show that the logs were removed from a particular place, and that they were sawed up, and their identity destroyed, by the Western Shingle Company. Even if the allegation is a conclusion of law,—which it is unnecessary to determine,—that cannot be urged on the ground that the complaint does not state facts sufficient to constitute a cause of action. *Harris v. Halverson,* 23 Wash. 779 (63 Pac. 549).

But it is further claimed that this allegation is inconsistent with, and contradicted by, the allegation relative to the lien notice. The lien notice is made part of the complaint by apt reference. The description of the logs in the lien notice is as follows:

"A certain lot of logs, being about 640,000 feet in quantity, which were cut in Island county, state of Washington, and are marked B. B., and were put into and rafted in Useless Bay, from which place, while this lien was in full force, about 515,000 were taken away and sold to the Bell-Nelson Mill Company. The balance, about 120,000 feet, are now lying in said Useless Bay."

There is nothing in this lien notice inconsistent with the allegation that the Western Shingle Company eloigned and converted to their own use 133,000 feet of said logs. The entire 515,000 feet, including the 133,000 feet, may have been sold to the Bell-Nelson Mill Company, and the 133,000 feet may afterwards have come into the possession of the Western Shingle Company. The description in the lien notice is for the purpose of identifying the logs on which the respondent worked. If it gives a description of the logs "sufficient for identification with reasonable certainty," that is enough. We think this description meets

that requirement. *Wheeler v. Port Blakely Mill Co.,* 2 Wash. T. 71 (3 Pac. 635).

The evidence in this action shows that the respondent worked in getting out the logs described in the notice at the request of a partnership known as "Veazie & Yantis," who were engaged in logging in Island county. The work was done by the respondent between the 1st of July and the 21st of November, 1899. The logs were marked B. B., on the end, and they were put into and rafted in Useless Bay, in Island county, and there was due the respondent for such work, from Veazie & Yantis, when he quit work, the sum of $202.45. The notice of lien was filed November 29, 1899. The logs consisted of cedar and fir logs, were rafted into three sections, and were towed by one Sprague from Useless Bay to the Bell-Nelson Mill Company's boom at Everett, under direction of Mr. Veazie, one of the firm of Veazie & Yantis, where they were scaled on November 8, 1899. The next day Sprague towed the cedar logs to the mill of the Western Shingle Company, and that company sawed them up into shingles. Appellant purchased the logs from Veazie, and paid him therefor $540, the purchase being made for the Western Shingle Company. The evidence does not show that the cedar logs were ever sold to the Bell-Nelson Mill Company, but does show that they were taken to that company's boom at Everett. It appears from the evidence that these cedar logs were part of the 515,000 feet alleged to have been sold to the Bell-Nelson Mill Company, and the evidence further shows that the appellant knew, or could easily have ascertained from facts within his knowledge, that the logs had been put into Useless Bay by the firm of Veazie & Yantis at the time claimed in the lien notice, and that the respondent had a lien on the same for his work. The Western Shingle Com-

pany was not a purchaser in good faith without notice. The statement in the lien notice that they were sold to the Bell-Nelson Mill Company did not mislead the Western Shingle Company or the appellant, for the logs were taken by the Western Shingle Company during the thirty days which respondent had under the law in which to file his lien, and before the lien notice was filed. Section 5944, Bal. Code, expressly provides that no mistake or error in the description of the property against which the claim is filed shall invalidate the lien, unless it was made with intent to defraud or unless it appears that an innocent third party, without notice, direct or constructive, has, since the claim was filed, become the *bona fide* owner of the property liened upon, and that the notice was so deficient that it did not put him upon further inquiry. Section 5945 further provides that it shall be conclusively presumed by the court that a party purchasing the property liened upon within thirty days given to the claimant wherein to file his lien is not an innocent third party, and that he has not become a *bona fide* owner of the property liened upon, unless it shall further appear that he had paid full value for the property and has seen that the purchase money has been applied to the payment of the *bona fide* liens upon the property. No such claim is put forward in this case.

There are no recitals in the judgment showing the appearance or service on any member of the Western Shingle Company but the appellant. That company is a partnership composed of the persons mentioned in the judgment. Omitting the recitals in the judgment, it is as follows:

"It is hereby ordered and adjudged that the plaintiff James Livingstone do have and recover of and from the defendants John Lovgren, Chas. Johnson, Chas. Nelson,

Chas. Severn, Nels Gradein, Peter Johnson and Chas. Ekstrain, the sum of two hundred and sixty-seven dollars and forty-five cents ($267.45), together with their costs to be taxed by the clerk, and that this judgment may be satisfied out of the joint property of said defendants last named or the separate property of the said defendant John Lovgren."

The objection is made that the judgment is void in so far as it adjudges that the amount due the respondent may be satisfied out of the joint property of the partnership. This depends upon the question, is this an action based on contract, or is it an action for a tort? Our law provides:

"If the action is against the defendants jointly indebted upon a contract, he may proceed against the defendants served unless the court otherwise directs; and if he recovers judgment it may be entered against all the defendants thus jointly indebted so far only as it may be enforced against the joint property of all and the separate property of the defendants served." § 4881, Bal. Code.

It fully appears from the testimony in this case that the appellant, in purchasing the cedar logs, was acting for and on behalf of the Western Shingle Company, of which he was a member, in the ordinary course of business of the firm, and that the partnership converted the logs into shingles, and destroyed their identity. The statute under which this action is brought is as follows:

"Any person who shall eloign, injure or destroy, or who shall render difficult, uncertain or impossible of identification any saw logs, spars, piles, shingles, or other timber upon which there is a lien as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lien holder for the damages to the amount secured by his lien, and it being shown to the court in the civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount in such action against the said person, provided he be a party to

such action, or the damages may be recovered by a civil action against such person." § 5949, Bal. Code.

It is now generally held in this country that, if one wrongfully converts another's property, the injured party may sue him as a wrongdoer, or he may waive the tort, and recover the value of the property as on an implied contract. 15 Am. & Eng. Enc. Law (2d ed.), §§ 1113-1116; *Janes v. Buzzard,* 13 Fed. Cas., p. 344; *Roberts v. Evans,* 43 Cal. 380; *Toledo, etc., Ry. Co. v. Chew,* 67 Ill. 378; *Fiquet v. Allison,* 12 Mich. 328 (86 Am. Dec. 54); *Fanson v. Linsley,* 20 Kan. 235; *Walker v. Duncan,* 68 Wis. 624 (32 N. W. 689). We see no reason why the same principle should not apply in this case. Under § 5945, *supra,* it will be seen that if the purchaser, purchasing logs on which there is a lien within the thirty days in which the claimant has to file his lien fails to see that the purchase money is appropriated to the satisfaction of the liens, he is liable. Under this section it was lawful for the appellant to purchase the logs for their full value, and apply the proceeds to the lien claims. Full value ($540) was paid for the logs to Veazie, one of the firm of Veazie & Yantis. The appellant neglected, however, to see to the application of the proceeds. Having so neglected, the law implies a contract on his part to pay the lien claimant the amount of his lien, up to the full value of the logs. The law imposes upon him this duty. This, then, being an action upon a contract implied by law under § 4881, *supra,* it was proper to enter judgment against all the partners composing the firm of the Western Shingle Company, conditioned that the same should be enforced against the joint partnership property and the separate property of the appellant. No doubt that was what was intended by the judgment entered, and this judgment can be so enforced.

But no execution will lie thereon against the separate property of any of the partners except the appellant.

We do not think that the evidence supports the contention of the appellant that the respondent has been paid in part out of the fir logs sold to Duggan and the Bell-Nelson Mill Company. The proof, independent of the judgment roll in the case of the respondent against Veazie & Yantis introduced in evidence, establishes the fact that Veazie & Yantis were indebted to the appellant when he quit work on the logs, for the work done thereon, in the sum of $202.45. The said judgment roll establishes the fact that this claim was reduced to judgment, and a lien established on all of the logs, amounting to 635,000 feet, put into Useless Bay. It was this lien that the Western Shingle Company destroyed to the extent of 133,000 feet of cedar. In the absence of a showing to the contrary, we think these facts are sufficient to make out a *prima facie* case of nonpayment. The respondent could enforce his lien against the whole or any part of the logs upon which he performed labor. § 5943, Bal. Code.

We have been unable to discover any substantial error in the record. The judgment of the court below is, therefore, affirmed.

REAVIS, C. J., and FULLERTON, HADLEY, DUNBAR, MOUNT and ANDERS, JJ., concur.