HARLEY J. CONAWAY, p. b. a., *vs.* FRANK T. PEPPER, d. b. r.

ACTION—TORTIOUS TAKING OF PROPERTY MAY BE WAIVED AND VALUE RECOVERED IN ASSUMPSIT.

Where there has been a tortious taking or detention of property, which has not been sold by the tort-feasor, owner may waive the tort and recover the fair value thereof in an action of assumpsit upon an account for goods sold and delivered.

*(October 7, 1919.)*

RICE and HEISEL, J. J., sitting.

*James M. Tunnell* and *Daniel J. Layton, Jr.*, for plaintiff.

*Andrew J. Lynch* for defendant.

Superior Court for Sussex County, April Term, 1919.

APPEAL No. 15, April Term, 1917.

Action before a justice of the peace by Harley J. Conway against Frank T. Pepper. Judgment for defendant. Plaintiff brings appeal. Directed verdict for defendant. On motion for new trial. Motion argued before court in banc, whose opinion was that a new trial should be granted. New trial granted.

The *pro narr.* in assumpsit contained a count for goods sold and delivered and upon this count, the plaintiff relied. Pleas, non assumpsit, accord and satisfaction, etc.

It was agreed that the testimony produced at the trial before the jury was substantially as follows:

The plaintiff was the owner of a wagon which was in the custody of Lee Mitchell; that the defendant obtained the wagon of Mitchell, saying to him that he, the defendant, had seen the plaintiff, and that the plaintiff had let him, the defendant, have the wagon to haul tomatoes; that subsequently the plaintiff was told of the occurrence by Mitchell, who was informed by the plaintiff that the defendant had never seen him about the wagon, and that no permission was given; that at this time, the defendant came up to where the plaintiff and Mitchell were talking, and was asked by the plaintiff why he had obtained possession of his wagon in the manner above related, and that the defendant said he thought it would be all right; that the defendant then suggested a trade or exchange of wagons, and that the plaintiff said he did not want to

trade as he had no use for a wagon at that time, that he would sell his wagon but would not trade, and that his wagon was worth $50; that the defendant made no reply to this and walked off; that later, the plaintiff, in person or by agent, made two demands for the return of the wagon, which demands were refused.

The defendant denied having obtained possession of the wagon as related above, and testified that he had exchanged an old wagon of his own for the wagon of the plaintiff after some negotiations, he, the defendant, agreeing to pay to the plaintiff the sum of $20 to boot; that after he had obtained possession of the wagon of the plaintiff by means of the agreement of exchange or. trade, he, the defendant, agreed to buy also the old wagon which he had traded to the plaintiff, and did buy it by paying the sum of $10, and that he did thereafter pay the plaintiff the sum of $30 and retained both wagons; that the sum of $30 was in full of the whole transaction. The defendant denied that he had the conversation with the plaintiff and Mitchell as related above.

At the conclusion of the testimony, the defendant moved for a directed verdict, on the ground that the count for goods sold and delivered was an improper count on the facts, and that the remedy of the plaintiff was in tort and not in contract, there being no evidence that the wagon had been sold by the defendant and the proceeds thereof retained by him. *Hutton v. Wetherald*, 5 *Har*. 38

It was argued for the plaintiff that by the weight of modern authority, a person may declare in indebitatus assumpsit against any disseisor of his chattels, using the count for goods sold and delivered, the sale of course being a fiction, no matter whether the chattels have been sold and the proceeds retained or not; and this is especially true where there is some contractual relation between the parties, or circumstances from which the law may imply a promise. It was also contended by plaintiff that the jury might imply a contract of sale as a fact from the evidence.

The court directed a verdict for defendant, and thereupon plaintiff moved for a new trial upon the ground, *inter alia*, of the alleged misdirection.

Because of the question of law raised, and in view of the case of *Hutton v. Wetherald*, *supra*, and other decisions by the court, the

Superior Court, upon application of the plaintiff, directed that the motion for a new trial be heard by the court in banc.

Argued before BOYCE, CONRAD, RICE and HEISEL, Associate Judges, constituting the court in banc, at the June term of the Superior Court, 1919.

It was urged for the plaintiff that the weight of modern authority permits a recovery in assumpsit upon a state of facts such as are presented in this case; and that certainly the law demands the employment of this action to recover from the defendant that to which he is not, in good faith, entitled, and which at the same time enriches him. It was conceded that it is sometimes said that this action will not be permitted, that is the tort waived and a suit brought on contract, unless the tort-feasor has converted the property into money. This is due it was said to the fact that for a long while, in the history of the English law, the count for money had and received was the only form of indebitatus assumpsit which was used in cases involving the waiver of tort. 2 *Street, Foundations of Legal Liability*, 216.

But it was insisted that in a case like this, the plaintiff may declare in indebitatus assumpsit against the disseisor of chattels using the count for goods sold and delivered, the sale of course being a fiction. 2 *Street*, 216; 2 *Greenl. Ev.* § 108.

The basis of the waiver of tort is the unjust enrichment of the tort-feasor.

The measure of recovery is the amount which it is against conscience for the defendant to keep. *Keener, Quasi Contracts*, 159, 160, 183.

The question of waiving the tort has arisen in a class of cases suggested by, and yet differing from, those in which the defendant has wrongfully used the plaintiff's personal property, namely, where the defendant has converted the property, but, instead of selling, either keeps it or has consumed it. Here the decisions are in conflict. *Keener, Quasi Contracts*, 192.

The modern rule is that a promise will be implied in law to pay the value of a chattel wrongfully taken, whether sold or detained, and all the cases have been cited from that view point. Whatever may be the judgment of this court in respect of the case

of *Hutton v. Wetherald, supra,* relied on by the defendant, that case may well be differentiated from the case at bar, in which the defendant obtained possession of the wagon wrongfully, that is, by artifice, fraud or trick, but in form as a bailee. According to the testimony for the plaintiff, when the defendant left the plaintiff and Mitchell, he was consciously in possession of the plaintiff's chattel, as bailee, knowing that the plaintiff was willing to sell, and knowing the plaintiff's estimation of its value; and a demand for the chattel, and a refusal to deliver it following, it was within the province of the jury to ascertain from all the facts and surrounding circumstances whether an implied promise to pay its value did or did not result.

For the defendant it was said, all the authorities agree that where personal property is tortiously taken or converted into money or money's worth, the owner may waive the tort and sue the wrongdoer in assumpsit for its value. The authorities differ, however, as to the right of the owner to sue in assumpsit where the wrongdoer has not sold or otherwise disposed of the property but retains it for his own use. One line of decisions denies the right to bring an action of assumpsit in such cases; to this line, the decisions in this state adhere, as in *Hutton v. Wetherald,* 5 *Har.* 38.

In the case in hand the testimony of the plaintiff was to the effect that he never sold the wagon to Pepper, that Pepper took it wrongfully and still holds it; that there was never any contract or agreement between him and Pepper express or implied for the sale and delivery of the wagon.

Many cases, including the leading case of *Jones v. Hoar,* 5 *Pick.* (*Mass.*) 285, were cited. Valuable notes, discussing the question raised in this case, will be found in 17 *Inn. Cas.* 975, 49 *Am. St. Rep.* 492, and 134 *Am. St. Rep.* 189.

HEISEL, J., delivering the opinion of the court:

We are of opinion the jury would not be justified in implying a contract of sale, as a fact, from the evidence.

Can the plaintiff, where there is a tortious or wrongful taking or detention of personal property, which has not been sold by the tort-feasor, waive the tort and recover the fair value thereof,

in an action of assumpsit upon a count for goods sold and delivered?

*Hutton v. Wetherald,* 5 *Harr.* 38, decided by the Superior Court of this state in 1848, following *Jones v. Hoar,* 5 *Pick.* (*Mass.*) 289, answered that question in the negative.

After a very careful consideration of the argument and briefs of counsel, we feel, however, that the great weight of authority is now to the contrary, and that the better rule is to allow recovery in such actions.

In *Jester, et al. v. Knotts, ante,* 57 *Atl.* 1094, the Superior Court, in stating what is universally held to be the law where the property wrongfully taken has been sold by taker, said:

"If one tortiously takes possession of property, and sells it, and thereby comes into possession of money belonging to another, the law will not permit him to deny an implied promise to pay the proceeds as money had and received to the use of the party entitled. The owner of the property thus taken and disposed of may either disaffirm the act, and treat the taker as a wrongdoer, and sue him for a trespass or for a conversion of the property, or he may waive the tort, affirm the act, and have an action like this for money had and received from the proceeds of the sale.

It would seem that every reason for allowing a recovery in assumpsit, upon a count for money had and received, of the amount for which the property was sold, will apply with equal force, to a case for the recovery of the fair value of the property, upon a count for goods sold and delivered, where the property is. not sold, but retained or consumed by the tort-feasor. 2 *Street Foundations of Legal Liability,* 216; 3 *Street,* 199; *Keener, Quasi Cont.* 192; 2 *Page on Cont.* § 843; 2 *R. C. L.* 756, 757; *Woodruff v. Zaban,* 17 *Ann. Cas.* 975 (*note*) 977; 1 *Cooley on Torts,* §§ 109-111; 1 *Hilliard on Torts,* 47; *Putnam v. Wise,* 1 *Hill* (*N. Y.*) 240 (*note*); *Hill v. Parrott,* 3 *Taunton,* 274; *Bradfield v. Patterson,* 106 *Ala.* 397, 17 *South.* 536; *Roberts v. Evans,* 43 *Cal.* 380; *Fountain v. Sacramento,* 1 *Cal. App.* 461, *82 Pac.* 637; *City of Elgin v. Joslyn,* 136 *Ill.* 525, 26 *N. E.* 1090; *Reynolds v. N. Y. Trust Co.,* 188 *Fed.* 611, 110 *C. C. A.* 409, 39 *L. R. A.* (*N. S.*) 309: *Douns v. Finnegan,* 58 *Minn.* 112, 59 *N. W.* 981, 49 *Am. St. Rep.* 488; *Crane v. Murray,* 106 *Mo. App.* 697, 80 *S. W.* 280; *Galvin v. Mac Mining & Milling Co.,* 14 *Mont.* 508, 37 *Pac.* 366; *Abbott v. Blossom,* 66 *Barb.* (*N. Y.*)

353; *Terry v. Munger,* 121 *N. Y.* 161, 24 *N. E.* 272, 8 *L. R. A.* 216, 18 *Am. St. Rep.* 803; *Braithwaite v. Akin,* 3 *N. D.* 365., 56 *N. W.* 135; *Barker v. Cory,* 15 *Ohio,* 9; *Albrook v. Hathaway,* 3 *Sneed* (*Tenn.*) 454; *Tidewater Quarry Co. v. Scott,* 105 *Va.* 160, 52 *S. E.* 835, 115 *Am St.. Rep.* 864, 8 *Ann. Cas.* 736; *Livingstone v. Lovgren,* 27 *Wash.* 102, 67 *Pac.* 599; *Norden v. Jones,* 33 *Wis.* 600, 14 *Am. Rep.* 782.

We are of opinion a new trial should be granted. It is ordered that the foregoing opinion and decision be and it is hereby certified to the Superior Court, Sussex County.

The opinion being so certified, the Superior Court awarded a new trial.